IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN HARDNEY,

    Plaintiff,               No. CIV S-04-0476 JAM KJM P

    vs.

ANTHONY LAMARQUE, et al.,     <u>ORDER AND</u>

    Defendants.          <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. The three remaining defendants -- LaMarque, McDonald and Burke -- have filed a motion for summary judgment.

I. <u>Summary Judgment Standards Under Rule 56</u>

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the

nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On June 21, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

II. Factual and Procedural Background

A. Prior Habeas Petition

Plaintiff filed a federal petition seeking a writ of habeas corpus in this court on August 13, 1999, and an amended petition on October 4, 1999. See DeArmond v. LaMarque, Civ. No. 99-1586 (DeArmond), Docket Nos. 1, 6.[1] Respondent filed a motion to dismiss on the

---

[1] Despite the different names, the court has determined that the same person is both plaintiff in this action and petitioner in the prior action. Docket No. 10 at 3.

ground the petition was filed outside the AEDPA statute of limitations. Id., Docket No. 12. On February 6, 2001, Magistrate Judge Hollows issued his findings and recommendations in the matter. Id., Docket No. 15. Judge Hollows found that plaintiff's conviction became final on February 14, 1989 and, because this date was prior to the enactment of the AEDPA, the statute of limitations expired one year from the enactment date of April 24, 1996, subject to any equitable tolling. Id. at 2-3. Unless the limitations period was otherwise tolled, plaintiff had until April 24, 1997 to file his habeas petition. Judge Hollows rejected plaintiff's arguments based on equitable tolling and recommended that the habeas petition be dismissed as untimely. Id. at 4-7.

In his objections to the findings and recommendations, filed February 28, 2001, plaintiff for the first time raised the inadequacies of the library and library staff at Salinas Valley State Prison (SVSP). Id., Docket No. 17 at 6. Plaintiff continued to raise the shortcomings of the SVSP law library resources in subsequent filings, see id., Docket Nos. 25 at 8-9 & 27 at 11-17, up until the time the Ninth Circuit Court of Appeals denied his request for a certificate of appealability on January 23, 2003. Id., Docket No. 38. The shortcomings of the law library and library staff at SVSP as put forth by plaintiff in the context of proceedings on the 1999 petition are the bases for plaintiff's denial of access to courts claims in this case against the three remaining defendants, former SVSP Warden LaMarque and library technical assistants (LTAs) McDonald and Burke.

B. Facts Of This Case

Plaintiff was incarcerated at SVSP during the times material to the matters at issue in this case. Defs.' Statement of Undisputed Facts (DSUF), Ex. A. The legal books and materials in the law libraries at SVSP are not directly accessible to prisoners. Hardney Dep. at 43:13-25. A prisoner must request the materials necessary for his research from library staff. Id. Inmate clerks also are allowed to locate the requested materials for a prisoner. Id. Case law, statutory law and assorted reference materials may also be provided through a paging system that can print from electronic media. See DSUF, Ex. E at 2.

LTAs are responsible for the day to day operations of the library and their duties include circulation of library materials and the training and supervision of inmate law clerks. DSUF, Ex. D at 1. According to plaintiff, the LTAs wore "Librarian" tags and responded when plaintiff addressed one of them as "librarian." Hardney Dep. at 17:14-18:11. LTAs rotate among the different law libraries at SVSP. Id. at 58:15-23. Prison regulations prohibit library staff, including inmate clerks, from providing assistance to prisoners in the form of legal advice, filling out legal forms, or interpretations of the law. DSUF, Ex. E at 3, 5.

In December 1997, plaintiff asked defendant McDonald to see "the new habeas corpus act . . . the one-year deadline."[2] Hardney Dep. at 19:6-11. In response, McDonald referred plaintiff to the inmate clerks. Id. at 48:25. In McDonald's presence, plaintiff related the same request to an inmate clerk. Id. at 20:19-24, 46:25-47:3. The clerk told plaintiff that the one-year statute of limitations did not apply in plaintiff's case because it only applied to death row inmates. Id. at 19:9-13. When plaintiff asked the clerk to see the statute anyway, the clerk said the library did not have it because it only applied to death row inmates. Id. at 46:4-13. McDonald did not at any point involve herself in the conversation between plaintiff and the inmate clerk. Id. at 47:14-15.

Between 1998 and 1999, plaintiff asked defendant Burke to see the "Anti-terrorist Act." Id. at 60:24-61:1. Burke asked an inmate clerk to get the materials for plaintiff, but the clerk told both plaintiff and Burke that the library did not have a copy of the Act because it applied only to state death row prisoners. Id. at 61:17-62:22. With respect to Burke, plaintiff also has alleged that Burke shared with him that she was initially hired as a maintenance worker. Id. at 59:13-15.

Plaintiff asserts that in the time he used the law libraries at SVSP, the only library staff he ever encountered consisted of inmate clerks and persons who have been identified,

---

[2] Plaintiff did not learn the citation for the codified section of AEDPA, 28 U.S.C. § 2254, until after his federal habeas petition was filed. See Hardney Dep. at 44:9-11, 45:6-16.

5

through discovery in this lawsuit, as LTAs. Id. at 58:24-59:2. Plaintiff testified that McDonald told him she would receive on the job training from inmate law clerks, specifically on how to do research, and that LTAs relied heavily on the inmate clerks for help in locating materials requested by prisoners. Id. at 40:17-42:19, 43:4-6.

III. Analysis

Defendants make a number of arguments in support of summary judgment. One of these arguments – that plaintiff has not shown it was defendants' acts or omissions that caused him to suffer an "actual injury," see Defs.' Mot. For Summ. J. at 10-11 – entitles all three defendants to summary judgment in their favor. Therefore, there is no need to reach defendants' other arguments.

Prisoners have a fundamental constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). The Supreme Court has emphasized that Bounds "guarantees no particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts" and "it is that capability, rather than the capability of turning pages in a law library, that is the touchstone." Lewis v. Casey, 518 U.S. 343, 356 (1996). However, while reaffirming the existence of the right of access to the courts in Lewis, the Court noted that "Bounds did not create an abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Id. at 352. Rather, to satisfy the "actual injury" requirement under Lewis, the plaintiff "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Id. In other words, plaintiff has to show that the alleged violation of his rights was "proximately caused" by defendants. Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991).

Plaintiff cannot establish that defendants' acts caused his federal habeas petition to be dismissed as untimely. It is undisputed that in recommending that the petition be dismissed

as untimely, Judge Hollows found that the last date for plaintiff to file his habeas petition was April 24, 1997. DeArmond, Docket No. 15 at 3, 7. It is further undisputed that the earliest possible date of any injury caused by any act or omission of defendants is December 1997, when plaintiff first spoke to LTA McDonald about the AEDPA. Hardney Dep. at 19:6-11, 60:24-61:1. There is no genuine issue of material fact as to the relevant dates.

Because the actions of defendants that plaintiff claims frustrated his ability to litigate his habeas challenge did not take place until after the time for filing his federal habeas petition had expired, none of defendants' acts can be found to be the proximate cause of plaintiff's failure to file his habeas petition on time. The three remaining defendants are entitled to summary judgment in their favor.

IV. <u>Plaintiff's July 25th Request To Re-enforce Prior Court Order</u>

On July 25, 2008, plaintiff filed a request with this court to "re-enforce" the court's February 29, 2008 order. In that order, the court granted plaintiff's request to propound additional interrogatories to defendants and gave defendants forty-five days from the date of the order in which to serve their answers to the additional interrogatories.

Defendants have not filed any response to plaintiff's July 25th request. At the same time, plaintiff has not renewed or mentioned his July 25th request in any of his subsequent filings in opposition to summary judgment, all of which were filed after July 25th. This court has reviewed the additional interrogatories plaintiff seeks to propound and is satisfied that any answers in response would not affect the recommendation of summary judgment in favor of defendants made here.

IT IS HEREBY ORDERED that Plaintiff's July 25th Request To Re-enforce Prior Court Order (Docket No. 59) is denied.

/////

/////

/////

1  IT IS HEREBY RECOMMENDED that:

2  1. Defendants' motion for summary judgment (Docket No. 57) be granted in
3  favor of defendants LaMarque, McDonald and Burke.

4  2. This case be closed.

5  These findings and recommendations are submitted to the United States District
6  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
7  days after being served with these findings and recommendations, any party may file written
8  objections with the court and serve a copy on all parties.  Such a document should be captioned
9  "Objections to Magistrate Judge's Findings and Recommendations."  The page limits previously
10 imposed on plaintiff apply to his objections.  Any reply to the objections shall be served and filed
11 within ten days after service of the objections.  The parties are advised that failure to file
12 objections within the specified time may waive the right to appeal the District Court's order.
13 Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
14 DATED: March 25, 2009.

_____
U.S. MAGISTRATE JUDGE

ar/2
hard0476.57

8